[No. 12213-1-III. Division Three. April 22, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. CHRISTOPHER L. FERREIRA, *Appellant.*

466

*Hugh M. Spall,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

THOMPSON, J. — Christopher Lee Ferreira, a juvenile, was convicted of five counts of first degree assault as an accomplice. He was committed to the Department of Social and Health Services, Division of Juvenile Rehabilitation, for 309 to 387 weeks. On appeal, he assigns error to several findings of fact and conclusions of law, challenges the sufficiency of the evidence to support his conviction, and argues that his sentence should be 150 percent, not 300 percent, of the standard range sentence for the most serious offense for which he was convicted. We reverse and remand for entry of judgment on five counts of second degree assault and for sentencing based on 300 percent of the standard range sentence.

Six-year-old Erin Plaster was shot in her Yakima home between 6:45 and 7 p.m. on December 2, 1991. The bullet pierced her left shoulder and hand. Present in the home with Erin were her mother, brother, and at least two neighborhood children.

The bullet which hit Erin and at least 12 other bullets which hit the Plaster home that evening were fired by Tommy Rabadan and Crespin Perez from inside a vehicle being slowly driven past the home by Marisol Rocha. Armando Barbosa and Christopher Ferreira were passengers in the vehicle. According to the driver, Mr. Ferreira gave directions to the crime scene.

Earlier that day, Mr. Ferreira was in the car when Tommy Rabadan shot at Justin Cunningham, another juvenile. Mr. Cunningham was either in the Plaster home or near it when Erin Plaster was shot, although the State did not establish that the shooters or Mr. Ferreira knew about his presence.

Mr. Ferreira admitted to police he knew beforehand the Plaster shooting was going to take place. He was charged with seven counts of being an accomplice to first degree

assault based on the State's belief seven victims were in the Plaster home at the time of the shooting. One count was dismissed on the State's motion prior to trial. The trial court found Mr. Ferreira guilty of five of the remaining six counts.

Mr. Ferreira was 15 years old at the time of the shooting. The standard sentencing range for first degree assault was 103 to 129 weeks. Because of the multiple convictions, Mr. Ferreira was sentenced to 309 to 387 weeks, 300 percent of the standard sentencing range as provided in RCW 13.40-.180(2).[1] Mr. Ferreira timely appealed his conviction and sentence.

## FIRST DEGREE ASSAULT

Mr. Ferreira assigns error to several findings of fact and conclusions of law and contends the evidence was insufficient to support his conviction of five counts of first degree assault. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980). He argues that the evidence, at best, proved the principals acted recklessly, not intentionally.

■ To establish first degree assault, intent to inflict great bodily harm must be shown. RCW 9A.36.011.[2] A person acts with intent when he acts with the objective or purpose to accomplish a result constituting a crime. RCW 9A.08.010-(1)(a). "Evidence of intent . . . is to be gathered from all of the circumstances of the case, including not only the manner and

---

[1]RCW 13.40.180 states in relevant part:

"Where a disposition is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations:

"(1) Where the offenses were committed through a single act or omission, omission, or through an act or omission which in itself constituted one of the offenses and also was an element of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense;

"(2) The aggregate of all consecutive terms shall not exceed three hundred percent of the term imposed for the most serious offense; . . .".

[2]RCW 9A.36.011 states in pertinent part:

"(1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

"(a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; . . .".

act of inflicting the wound, but also the nature of the prior relationship and any previous threats." *State v. Woo Won Choi*, 55 Wn. App. 895, 906, 781 P.2d 505 (1989), *review denied*, 114 Wn.2d 1002 (1990). *See also State v. Shelton*, 71 Wn.2d 838, 431 P.2d 201 (1967).

In *Choi*, there had been a brief altercation between the defendant and the victim at a card game. Later that evening, the defendant fired two shots through the victim's open car window, hitting the victim in the arm. *Choi*, at 906-07, concluded:

> Viewing this evidence most favorably to the State, there was testimony regarding a prior altercation, the testimony of [the victim] that Choi shot at him without provocation through an open window, and the physical evidence which revealed a shot at close range that would have hit [the victim's] head if he had not ducked. From that evidence, the trier of fact could have found intent to kill beyond a reasonable doubt.[3]

▮ Unlike *Choi*, the evidence here, when viewed most favorably to the State, is insufficient to establish the shooters' intent to inflict great bodily harm on any of the occupants in the house. As Mr. Ferreira contends, the trial court specifically rejected a finding that the shooters actually saw anyone inside the house. Instead, the court entered a finding that it was only "likely apparent" the house was occupied.

> From where the shots were fired, *it [was] likely apparent that the house was occupied*, as the kitchen window was partially exposed and afforded a view completely through the room to the back door where people could be observed. The front room blinds were drawn shut, but light could be observed around and through the blinds from where the shots were fired.

(Italics ours.)

The trial court also rejected a finding that the shots were fired at "occupied areas" of the house. Instead, it found the shots were fired at the kitchen and living room, not the empty bedroom.

Although the evidence does not support a finding that the shooters acted with intent to inflict great bodily harm, it does support a finding that they intended to create appre-

---

[3]Former RCW 9A.36.010 required *intent to kill*.

hension or fear to the likely occupants of the house and were therefore guilty of second degree assault. *See State v. Austin,* 59 Wn. App. 186, 193, 796 P.2d 746 (1990). A person is guilty of second degree assault if, under circumstances not amounting to assault in the first degree, he assaults another with a deadly weapon. RCW 9A.36.021(1)(c).

We reject Mr. Ferreira's contentions that (a) reckless endangerment, RCW 9A.36.045,[4] is a lesser included offense of first degree assault and (b) the evidence only proved reckless endangerment by the shooters. The intent of the Legislature in adopting RCW 9A.36.045, the so-called "drive-by shootings" statute, was explained as follows:

> The legislature finds that increased trafficking in illegal drugs has increased the likelihood of "drive-by shootings." It is the intent of the legislature in sections 102, 109, and 110 of this act to categorize such reckless and criminal activity into a separate crime and to provide for an appropriate punishment.

Laws of 1989, ch. 271, § 108.

There is no evidence drug trafficking was involved and, as previously stated, the evidence as to culpability was sufficient to convict Mr. Ferreira of second degree assault, a lesser included offense of first degree assault.

As to the number of counts for which the shooters, and hence Mr. Ferreira, can be convicted, a person who commits an act of violence with intent to place more than one person in fear of serious bodily injury may be found guilty of multiple offenses under the same criminal statute. *People v. Wieckert,* 191 Colo. 511, 554 P.2d 688 (1976); *State v. Gratz,* 254 Or. 474, 461 P.2d 829 (1969). *Cf. State v. Hicks,* 61 Wn.

---

[4]RCW 9A.36.045 states:

"(1) A person is guilty of reckless endangerment in the first degree when he or she recklessly discharges a firearm in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm to the scene of the discharge.

"(2) A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct, unless the discharge is shown by evidence satisfactory to the trier of fact to have been made without such recklessness."

App. 923, 931, 812 P.2d 893 (1991). Since the State proved five people were inside the house at the time of the shootings and each feared serious bodily injury, the State proved five counts of second degree assault.

## ACCOMPLICE LIABILITY

Mr. Ferreira contends he was merely present in the car when the shootings took place and that fact, standing alone, is insufficient to establish accomplice liability. He cites *In re Wilson*, 91 Wn.2d 487, 588 P.2d 1161 (1979) and RCW 9A.08-.020(3)(a)(ii).

A person is an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, he aids or agrees to aid such other person in planning or committing it. RCW 9A.08.020(3)(a)(ii). A person's physical presence and assent alone are insufficient to establish accomplice liability. *Wilson*, at 492; *State v. Amezola*, 49 Wn. App. 78, 741 P.2d 1024 (1987). He must knowingly aid or agree to aid. "Aid" means all assistance whether given by words, acts, encouragement or support. *Amezola*, at 88.

Mr. Ferreira's presence in the car alone would not be sufficient to find him guilty as an accomplice. *Wilson*. Further, directing someone where to drive might not, standing alone, prove accomplice liability. *State v. Scott*, 48 Wn. App. 561, 570, 739 P.2d 742 (1987), *aff'd*, 110 Wn.2d 682, 757 P.2d 492 (1988). However, the result is otherwise if such directions are accompanied by evidence they were given to facilitate the commission of a crime. *Scott*, at 570.

Here, the State's evidence indicated Mr. Ferreira was present earlier in the day when Mr. Rabadan shot at Mr. Cunningham. It was reasonable to conclude that Mr. Ferreira knew Mr. Rabadan was still armed when they drove by the Plaster home. Based on the testimony of the driver, the trial court found that at several points along the way to the Plaster home, Mr. Ferreira gave Ms. Rocha directions on how to get there. Additionally, Mr. Ferreira admitted to police he knew beforehand a shooting was going to take

place, although it is not clear how long beforehand he knew.[5]
Mr. Ferreira does not assign error to the relevant portions of
these findings, although he does assign error to the finding
he participated in hiding the vehicle. Although the latter
assignment is well taken, it is not determinative of accomplice liability.

 Mr. Ferreira associated himself with the entire undertaking and, by his actions, showed he desired to make it
succeed. *Wilson*, at 491. Accomplice liability is premised on
the accomplice's general knowledge that he is assisting the
principal in committing a crime, not upon his specific knowledge of the elements of the principal's crime. *State v. Davis*,
101 Wn.2d 654, 658-59, 682 P.2d 883 (1984). *See also State v.
Langford*, 67 Wn. App. 572, 580, 837 P.2d 1037 (1992), *review
denied*, 121 Wn.2d 1007 (1993).

## SENTENCING UNDER THE JUVENILE COURT ACT

Mr. Ferreira contends his sentence violates the 150 percent rule of RCW 13.40.180(1) because the juvenile court
found the offenses were allegedly committed through a single act: his giving directions to the driver of the vehicle.
RCW 13.40.180(1) states:

> Where the *offenses were committed through a single act* or
> omission, omission, or through an act or omission which in
> itself constituted one of the offenses and also was an element

---

[5]No error has been assigned to the relevant portions of findings of fact 1, 3, 4, 5,
and 7. Without assigning error to finding of fact 7, Mr. Ferreira denies he knew
beforehand that the shooting was going to occur. However, the testimony of
Detective Ruegsegger indicates otherwise:

> Chris told me that he was in the vehicle prior to the . . . assault occurring,
> and that he knew that it was going to occur.
> . . . .
> He advised that he was in the car prior to the actual assault matter, and that
> he would, that he was with individuals who were going to participate in that
> assault, and that he knew that an assault or a shooting was going to take place.

It is not clear from the testimony when Mr. Ferreira knew the shooting would take
place. The testimony of the driver, Marisol Rocha, is unclear, although she
testified that while driving to the crime scene, Armando Barbosa stated "he
wanted to shoot him personally". She did not say who "he" was or how soon the
statement was made before the shooting. She testified that everyone in the car
could hear that statement. She also testified Mr. Ferreira said "his uncle lived
right across the street where the house got shot at".

of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense;

(Italics ours.) The State contends proper application of RCW 13.40.180(1) is resolved by resorting to the rule governing single crimes and multiple victims set forth in *State v. Collicott*, 118 Wn.2d 649, 827 P.2d 263 (1992) and *State v. Lessley*, 118 Wn.2d 773, 779, 827 P.2d 996 (1992). That is, multiple crimes affecting multiple victims do not constitute the same criminal conduct under RCW 9.94A.400(1)(a), and the same principle should apply to RCW 13.40.180(1).

■ The sentencing of an accomplice is based on the acts of the principal, not the acts of the accomplice. As applied to this case, the focus is on the shooting into the house where five victims were present, not the giving of directions.

■ Convictions of crimes involving multiple victims do not encompass "the same criminal conduct" for purposes of the adult sentencing provisions of RCW 9.94A.400(1)(a);[6] *Lessley*, at 779; *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987), nor should it constitute a "single act or omission" under the juvenile sentencing provisions of RCW 13.40.180(1).

Although the language of RCW 13.40.180(1) does not contain the term "same criminal conduct", convictions involving multiple victims should follow the *Dunaway* rationale. To hold otherwise would ignore the purposes of the juvenile court act, which purposes are similar, in relevant part, to the

---

[6]RCW 9.94A.400(1)(a) provides in pertinent part: "[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the *same criminal conduct* then those current offenses shall be counted as one crime. . . . 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition does not apply in cases involving vehicular assault or vehicular homicide if the victims occupied the same vehicle. However, the sentencing judge may consider multiple victims in such instances as an aggravating circumstance under RCW 9.94A-.390." (Italics ours.)

Sentencing Reform Act of 1981 (SRA). Like the SRA, the juvenile court act intends that punishment be proportionate to the seriousness of the offense and protect the public. *Compare* RCW 9.94A.010(1), (4) *with* RCW 13.40.010(2)(a), (d). As one commentator on the SRA has noted, "to victimize more than one person clearly constitutes more serious conduct" and, therefore, such crimes should be treated separately. D. Boerner, *Sentencing in Washington* § 5.8(a), at 5-18 (1985), *quoted in Dunaway*, at 215. Additionally, treating such crimes separately, thereby lengthening the term of incarceration, will better protect the public by increasing the deterrence of the commission of these crimes. For these reasons, we conclude that crimes involving multiple victims must be treated separately for purposes of sentencing under RCW 13.40.180. As the trial court determined, RCW 13.40-.180(2) applies to Mr. Ferreira's sentencing. It states: "The aggregate of all consecutive terms shall not exceed three hundred percent of the term imposed for the most serious offense; . . .".

We remand for entry of judgment on five counts of second degree assault and sentencing based on the 300 percent rule.

SHIELDS, C.J., and SWEENEY, J., concur.