897 P.2d 661

STATE of Arizona, Appellee,

v.

Michael Hashem SALMAN, Appellant.

No. 1 CA–CR 93–0426.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 20, 1994.

Review Denied June 29, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephanie L. Swanson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Judge.

Appellant Michael Salman was convicted of aggravated assault with a dangerous weapon under Arizona Revised Statutes Annotated ("A.R.S.") sections 13–1203(A)(2) and 13–1204(A)(2) and (B), and sentenced to six years imprisonment. He presents three arguments on appeal. We disagree with each and affirm.

### FACTS

On July 21, 1992, two teenagers, Jason Helms and John Cross, got into a fight at Paradise Valley Mall. Later that day, Cross decided to return to Jason's house that eve-

ning to get into another fight. He asked his good friend Michael Salman to accompany him as a back-up. Cross invited others to watch the fight as well.

That night Cross, Salman, and another friend, Carlo Zamorano, drove in Cross's car to Jason Helms's neighborhood and parked around the corner from his house. Spectators followed in several other cars, but no one got out. As Cross approached the Helmses' residence, he heard the cars filled with spectators leaving. Cross returned to his car. At that point, Zamorano received the keys to the car and instructions about where to park. Cross was joined by Salman and the two approached the Helmses' house, wearing their shirts over their faces as masks. Cross lagged behind Salman, who was carrying a gun.

At this time, Judi Helms, Jason's mother, was sitting on a couch inside the family room, which faced the front yard. She was home alone; both Jason and her husband were gone. It was about 9:30 p.m. and she was watching her 50-inch television. The television, when playing at a normal volume as it was that evening, could be heard outside. One of the family's vehicles was parked in the driveway. Several lights were on inside the house. Although the vertical blinds on a front window were drawn, light could be seen outside.

Salman opened fire at the Helmses' house, shooting his .38 caliber revolver multiple times. Cross saw flashes of light and windows shatter as this happened. Inside, a crystal vase near Judi Helms exploded. Realizing that bullets were being fired into the house, she was terrified and fell to the ground. Although none of the bullets hit her, she counted five shots that were fired at the house. Salman and Cross fled.

Pursuant to a valid warrant, Salman was arrested on July 22, 1992. A .38 caliber gun with five expended rounds was recovered from his room. After properly being advised of his rights, he admitted to shooting at the Helmses' house. Salman also admitted that he intended to "gank" the Helms family—a term he defined to mean to intimidate or scare. Throughout the police interrogation

and the trial, Salman stated without exception that he believed no one was home.

Salman was convicted of aggravated assault after a jury trial. On appeal to this court, he raises three arguments: (1) There was insufficient evidence of his mens rea to support the jury's verdict; (2) the trial court erred under Arizona Rules of Evidence 404(b) and 403 by allowing testimony about a prior incident in which Salman had pulled a gun on another person to help a friend; and (3) the trial court committed reversible error by instructing the jury that reasonable doubt did not mean imaginary doubt.

## DISCUSSION

### A. Sufficiency of the Evidence: Mens Rea for Assault

■ Salman alleges that there was insufficient evidence presented at trial about his mens rea to prove that he committed aggravated assault. We disagree.

■ When reviewing the sufficiency of the evidence, the appellate court does not reweigh the evidence to decide if it would reach the same conclusion as the trier of fact. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989); *State v. Barger*, 167 Ariz. 563, 568, 810 P.2d 191, 196 (App.1990). All evidence is viewed in the light most favorable to sustaining the verdict and all reasonable inferences are resolved against the defendant. *State v. Tison*, 129 Ariz 546, 552, 633 P.2d 355, 361 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). If conflicts in the evidence exist, the appellate court must resolve such conflicts in favor of sustaining the verdict. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). When a defendant challenges the sufficiency of the evidence, the court will affirm the conviction if there is "substantial evidence" to support the guilty verdict. *Guerra*, 161 Ariz. at 293, 778 P.2d at 1189; *Tison*, 129 Ariz. at 552, 633 P.2d at 361. "Substantial evidence" means:

[m]ore than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached. It is of a character which would convince an unprej-

udiced thinking mind of the truth of the fact to which the evidence is directed. If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial.

*Guerra,* 161 Ariz. at 293, 778 P.2d at 1189 (citing *Tison,* 129 Ariz. at 553, 633 P.2d at 362). We believe that the State presented substantial evidence about the mens rea of Salman to support a conviction of aggravated assault.

▮ Assault is defined as "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury." A.R.S. § 13–1203(A)(2) (1989).[1] In Arizona's Criminal Code, " 'intentionally' ... means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct." A.R.S. § 13–105(7)(a) (Supp.1993). A statutory rule of construction in Arizona provides:

> If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears.

A.R.S. § 13–202(A) (1989); *State v. Rineer,* 131 Ariz. 147, 148, 639 P.2d 337, 338 (App. 1981).[2] Thus, to demonstrate that Salman had a culpable mens rea, the State must have presented at trial such proof as a reasonable mind would employ to support the conclusion that (1) Salman intended to fire his gun at the house and (2) by firing his gun, he intended to place another person in reasonable apprehension of imminent physical injury. *In the Matter of the Appeal in Pima County Juvenile Action,* 143 Ariz. 254, 256, 693 P.2d 909, 911 (1984) (hereinafter *"Pima County "*).

Here, it is undisputed that the first element is satisfied. Salman admits that he intentionally fired his gun at the Helmses' house. Remaining is whether the State presented sufficient evidence to allow the jury to reasonably conclude that Salman intended to place another person in reasonable apprehension of imminent physical injury.

To support the conviction, the State cites *Pima County,* 143 Ariz. 254, 693 P.2d 909. In *Pima County,* the Arizona Supreme Court considered whether a fleeing defendant who fired his gun at a police car in pursuit, intending to shoot out the car's tires, possessed the requisite mens rea to be convicted of aggravated assault. *Id.* at 255–56, 693 P.2d at 910–11. The court held that "[w]hile an intent to place the officer in reasonable apprehension of physical injury was a necessary element of the state's case, such specific intent could be *clearly inferred* from the evidence adduced at hearing." *Id.* at 256, 693 P.2d at 911 (emphasis added). Taking into consideration the distance at which the defendant fired at the officer, the response of the officer, and what the officer observed and heard, the court concluded that there was sufficient evidence for the jury to find that the defendant intended to place the officer in reasonable apprehension of imminent physical injury. *Id.*

*Pima County* supports the conclusion that a defendant's intent to cause reasonable apprehension of imminent physical injury in the victim can be inferred from the evidence. Nevertheless, it is distinguishable from the present case in one important regard. In *Pima County,* the defendant *knew* that an officer was riding in the car at which he fired. Here, there was no direct evidence that Salman actually knew that anyone was present in the Helmses' house. Accordingly, the question this court must resolve is whether a jury reasonably could infer from the State's evidence that Salman intended to place another person in reasonable apprehension of imminent physical injury by firing at the Helmses' house, despite the lack of direct evidence that he knew it was occupied.

There are no Arizona cases addressing this issue. In *State v. Ferreira,* 69 Wash.App. 465, 850 P.2d 541 (1993), a defendant fired a gun from a slow-moving vehicle into a house,

---

**1.** In this case, Salman was convicted of aggravated assault because he used a dangerous weapon. A.R.S. § 13–1204(A)(2) (1989).

**2.** A.R.S. section 13–202(A) has not been amended since 1978 and is identical to the provision cited in *Rineer.*

injuring one of the five people inside. The trial court refused to find that the shooter actually knew or observed that people were inside the house. Rather, it found:

> [f]rom where the shots were fired, *it [was] likely apparent that the house was occupied*, as the kitchen window was partially exposed and afforded a view completely through the room to the back door where people could be observed. The front room blinds were drawn shut, but light could be observed around and through the blinds from where the shots were fired.

*Id.* at 543 (emphasis in original). Moreover, instead of finding that the defendant fired the shots at "occupied areas," the trial court found that the shots were fired at the kitchen and the living room. *Id.* It concluded that this evidence sufficiently demonstrated that the defendant intended to inflict great bodily harm. *Id.*

The Court of Appeals of Washington disagreed. It held that the evidence did not "support a finding that the shooter[ ] acted with intent to inflict great bodily harm...." *Id.* The court held, however, that the evidence did "support a finding that [the defendant] intended to create apprehension or fear to the likely occupants of the house...." *Id.*

This case presents a similar scenario. Although no direct evidence established that Salman knew the Helmses' house was occupied, he should have known there were "likely occupants" inside. Salman, by his own admission, was there to intimidate or scare the Helms family. He went to their residence with a .38 caliber gun. A car was parked next to the house. Lights were on inside the house. Although the family room blinds were drawn shut, light could be observed around the blinds and through the cracks. The television was turned on loud enough that it could be heard outside. Finally, it was a Wednesday night about 9:30 p.m. These factors support the reasonable conclusion that even if Salman did not *know* the house was occupied, the conditions surrounding the incident made it likely that the house was occupied.

We agree that actual knowledge of another person's presence should not be required for a jury to infer a culpable mens rea for defendants charged under A.R.S. section 13–1203(A)(2). Rather, if the evidence demonstrates the "likely presence" of another person and that the defendant intended to do the act, a jury may infer that the defendant intended to cause reasonable apprehension of imminent physical injury.

Public policy supports our conclusion as well. The statutory rule of construction under A.R.S. section 13–104 (1989) provides:

> The general rule that a penal statute is to be strictly construed does not apply to this title, but the provisions herein must be construed according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes stated in [A.R.S. section] 13–101.

The "public policy and general purposes" of the criminal code in A.R.S. section 13–101 (Supp.1993) include:

> 1. To proscribe conduct that unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests;
>
> ....
>
> 4. To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each; and
>
> ....
>
> 6. To impose just and deserved punishment on those whose conduct threatens public peace.

Our decision today effectuates these policies. Were we to hold that a defendant could avoid penal sanctions for assault merely by asserting that he or she "did not know" the other person was present, we would neither give "fair meaning" to the terms of the applicable assault statute, nor proscribe the inexcusable and substantial threat of drive-by shootings. Such a holding could not purport to "differentiate on reasonable grounds" between two drive-by shooters—one who sees people inside a house, and the other who observes and ignores all indications of people inside. Finally, requiring defendants actually to *know* that a victim is present would inhibit the imposition of "just and deserved punishment" on those who disrupt the public peace by engaging in this potentially-lethal activity.

California recognized the anomaly of requiring actual knowledge of the victim's presence in assault cases in which the victim was seriously injured. In *People v. Lathus,* 35 Cal.App.3d 466, 110 Cal.Rptr. 921, 924 (1973), the court stated:

> [w]hen an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the battery is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety.... It would be anomalous to hold that a person who has injured another seriously by deliberately shooting a gun into a building or at a moving train or at or in the direction of a vehicle stalled on a public highway, can escape the consequences of his highly dangerous act by the bald assertion that he did not know that anyone was in the building or in the train or in or near the vehicle.

Here, although Judi Helms fortunately avoided serious injury, this rationale is persuasive. Salman fired a gun into a house—an inherently dangerous act by any standard. Even though he says he did not *actually know* it was occupied, he disregarded all indications that people were inside. Certainly, the law in Arizona cannot tolerate such a "deliberate and conscious disregard of human safety."

Therefore, because the State introduced evidence demonstrating the likely presence of another person in the Helmses' residence, that Salman intended to fire the gun, and that he intended to create reasonable apprehension of imminent physical injury, we hold that the jury's verdict was supported by substantial evidence.

### B. Evidentiary Rulings

At trial, the State offered testimony that one month before firing the bullets into the Helmses' house, Salman drew and pointed his gun at another person to help a friend. Over objection, the trial court allowed the testimony. On appeal, Salman argues that by admitting this evidence, the trial court erred pursuant to Arizona Rules of Evidence 404(b) and 403. We disagree.

We first evaluate Salman's Rule 404(b) argument—that the prior incident was offered in order to prove his character "in order to show action in conformity therewith." The admission of prior bad acts evidence under Rule 404(b) is within the trial court's discretion, which an appellate court will not reverse absent an abuse of discretion. *State v. Robinson,* 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1107 (1991); *State v. Woody,* 173 Ariz. 561, 563, 845 P.2d 487, 489 (App.1992).

> Arizona Rule of Evidence 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When admitting testimony concerning the previous incident, the trial court found that it was introduced to show intent. We agree. The testimony involving the prior incident did not tend to "show a disposition toward criminality from which guilt on this occasion is to be inferred" as Salman suggests. *State v. Ramirez Enriquez,* 153 Ariz. 431, 432, 737 P.2d 407, 408 (App.1987). Rather, it tended to show Salman's intent and motive to carry and use his gun on behalf of his friend, John Cross, to scare a third person, Jason Helms in this case. We, therefore, conclude that the trial court did not abuse its discretion by admitting the testimony.

We next examine Salman's Rule 403 argument—that the prior incident's "probative value is substantially outweighed by the danger of unfair prejudice." We note that no objection was raised at trial. In *State v. Cannon,* 148 Ariz. 72, 76, 713 P.2d 273, 277 (1985), our supreme court stated that "we cannot require trial judges sua sponte to rule on issues not raised before them." The trial court, therefore, did not err by failing to exclude the prior incident sua sponte.

In *Cannon,* despite holding that the trial court did not err by failing to conduct a review sua sponte, the court still

 

considered whether the admission of such evidence amounted to fundamental error. *Id.* at 76, 713 P.2d at 277. Here, because the probative value of the prior incident was not substantially outweighed by unfair prejudice, we hold that there was no fundamental error in admitting this evidence.[3]

### C. Reasonable Doubt Instruction

■ Without objection, the trial court instructed the jury as follows:

The term "reasonable doubt" means doubt based upon reason. This does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all the evidence or from the lack of evidence.

Salman argues that by giving this instruction to the jury, the trial court committed reversible error. We disagree.

"[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Zaragoza,* 135 Ariz. 63, 66, 659 P.2d 22, 25 (1983) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)). "Where, however, [the court] determines the error to be fundamental, the defendant can raise it on appeal, despite his failure to object in trial court." *State v. White,* 160 Ariz. 24, 31, 770 P.2d 328, 335 (1989).

Here, because there was no objection to this instruction, we have reviewed it only for fundamental error. It is not fundamental error to give this instruction. *State v. West,* 176 Ariz. 432, 444, 862 P.2d 192, 204 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

### CONCLUSION

We have examined the record for fundamental error as required by A.R.S. section 13–4035 and have found none. For the foregoing reasons, we affirm Salman's conviction and sentence.

EHRLICH, P.J., and WEISBERG, J., concur.

3. Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis such as emotion, sympathy, or horror. *State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993). Moreover, even if prejudicial, the unfair prejudice to the defendant must substantially outweigh the probative value of the evidence. *Id.* Here, the prior incident in which Salman pulled a gun was introduced to prove his intent and motive. The gun was not fired in the prior incident, nor was anyone injured. Accordingly, the admission of this testimony was not error.