241 P.3d 443 (2010)
STATE of Washington, Respondent,
v.
Michael S. GATLIN, Appellant.
No. 28620-7-III.
Court of Appeals of Washington, Division 3.
October 21, 2010.
*445 David L. Donnan, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
June Riley, Columbia County Prosecuting Attorney, Dayton, WA, for Respondent.
BROWN, J.
¶ 1 Michael S. Gatlin appeals his adjudication of guilt in juvenile court for three counts of second degree assault and gang intimidation. He contends sufficient evidence does not exist to support his convictions, double jeopardy principles preclude his convictions, and the bill of particulars violated his right to due process. We disagree with his contentions, and affirm.

FACTS
¶ 2 Because our standard of review for evidence sufficiency challenges requires us to view the facts most favorably for the State, the facts are related from the record in that context. The critical events occurred on or about Friday, September 25, 2009.
¶ 3 As a subset of an established Walla Walla gang called the Deuce 47 Crips, juveniles, Michael Gatlin and Jacob Lambert decided to form a group called the 4 Block Crips, referring to 4th Street in Dayton, Washington. Mr. Gatlin was a member of the Deuce 47 Crips. Police were not aware of any other members of 4 Block Crips or of any criminal activity engaged in by the group. Detective Kevin Bayne of the Walla Walla police department, a gang expert, testified Crips gangs associate themselves by using "Crips" in their names to give them "instant recognition." Report of Proceedings (RP) at 83.
¶ 4 One evening, several Dayton High School friends, including Mr. Gatlin, Mr. Lambert, and M.W., were drinking at a party inside a friend's home outside Dayton. During the evening, Mr. Lambert, with Mr. Gatlin's encouragement, asked M.W. if he would join the 4 Block Crips, but M.W. refused. Upset at the refusal, Mr. Gatlin and Mr. Lambert then told M.W. they were going to beat him up.
¶ 5 Later, outside the home, Mr. Lambert began chasing and hitting M.W. with Mr. Gatlin's encouragement and participation. M.W. fell to the ground in a "dog pile" and Mr. Lambert began choking him until M.W. passed out. RP at 139. Mr. Gatlin was yelling "4 Block Crips." RP at 139-40. While Mr. Lambert held his arm around M.W.'s throat, Mr. Galin separately punched M.W. Someone kicked M.W. while he was on the ground. Friends separated the boys and hid M.W. under a tarp. J.L. discovered M.W. and punched M.W. again, saying "4 Block Crips." RP at 116. Later, while M.W. was being driven home, Mr. Gatlin called to M.W.'s cell phone held by one of M.W.'s friends and said, "Well, tell Mark he's a dead man." RP at 138. M.W. suffered bruising to his face and other parts of his body. M.W. suffered bite marks on his back. M.W. was treated for his various injuries in a hospital emergency room and was sore for days after the assaults.
¶ 6 The State charged Mr. Gatlin with four counts of second degree assault, one count of third degree assault, and one count of gang intimidation. The State provided a bill of particulars that stated M.W. refused to join the "4 Block Crips" and "This gang meets the definition as set forth in RCW 28A.600.455." Clerk's Papers at 20-21. During closing argument, the State argued "Block 4[sic] Crips" was "tied to the Deuce 47 Crips." RP at 210.
¶ 7 The court found Mr. Gatlin guilty of count 1, second degree assault based on blows to M.W.'s head directly by him and as an accomplice to Mr. Lambert causing bruising and substantial injury, violating RCW 9A.36.021(1)(a), count 2, second degree assault based on Mr. Gatlin acting as an accomplice in the strangulation of M.W., violating RCW 9A.36.021(1)(a) and (1)(g), count 5, gang intimidation based on the earlier threat to M.W. when he refused to join the 4 Block Crips, and count 6, second degree assault based on Mr. Gatlin assaulting M.W. with the intent to commit gang intimidation, and violating RCW 9A.36.021(1)(e). Mr. Gatlin appealed.

*446 ANALYSIS

A. Evidence Sufficiency
¶ 8 Mr. Gatlin contends sufficient evidence does not show a "gang" existed to support count 5 or count 6. Additionally, he contends sufficient evidence does not show Mr. Gatlin's accomplice liability for count 1 or count 2.
¶ 9 "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of evidence is challenged in a criminal case, we must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. Id. "Circumstantial evidence and direct evidence are equally reliable." State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. Id. at 874-75, 83 P.3d 970.
¶ 10 Initially, Mr. Gatlin contends the trial court's findings of fact are insufficient and should be stricken. But, we do not review the court's findings of fact alone in reviewing an insufficient evidence claim. We review the entire record to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Accordingly, we decline Mr. Gatlin's request to strike the court's findings.
¶ 11 Mr. Gatlin argues that the evidence fails to establish that 4 Block Crips qualifies as a "gang." The criminal gang intimidation statute incorporates RCW 28A.600.455(2), which provides, "`Gang' means a group which: (a) Consists of three or more persons; (b) has identifiable leadership; and (c) on an ongoing basis, regularly conspires and acts in concert mainly for criminal purposes."
¶ 12 Testimony by Detective Bayne, a gang expert, indicated that Deuce 47 Crips is an established gang in Walla Walla. Gangs in Walla Walla engage in burglaries, robberies, graffiti, malicious mischief, assault, and witness intimidation. Detective Bayne testified the leaders of Deuce 47 Crips informed officers they are affiliated with the 74 Hoover Crips out of Tacoma. Detective Bayne further testified that gangs often have subsets and subsets of the Crips organization use the name "Crips" for recognition. Mr. Gatlin was a member of Deuce 47 Crips out of Walla Walla. He helped establish another group, 4 Block Crips, out of Dayton (his home town).
¶ 13 Viewing this evidence in the light most favorable to the State, 4 Block Crips is a subset of Deuce 47 Crips much like a fire team is part of a squad that is part of a platoon. Deuce 47 Crips is an established group with more than three members, an identifiable leadership, which acts in concert mainly for criminal purposes. This evidence, viewed in the light most favorable to the State, establishes the Deuce 47 Crips and its subpart, 4 Block Crips, are "gangs" under RCW 28A.600.455(2) or one gang consisting of subordinate, cooperative parts. Mr. Gatlin's assertions of insufficient evidence to support the gang intimidation and second degree assault based on gang intimidation convictions fail.
¶ 14 Regarding count 1 and count 2, a person is guilty of second degree assault when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm. RCW 9A.36.021(1)(a). A person is liable as an accomplice of another person in the commission of a crime if, "With knowledge that it will promote or facilitate the commission of the crime, he ... aids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a)(ii). An accomplice need not participate in each element of the crime or be present when the crime is actually committed. State v. Boast, 87 Wash.2d 447, 455-56, 553 P.2d 1322 (1976). Instead, an accomplice need have only general knowledge that he is encouraging or assisting in the criminal act. State v. Ferreira, 69 Wash.App. 465, 472, 850 P.2d 541 (1993). Thereafter, having agreed to participate in the criminal act, he runs the risk that the principal will exceed the scope *447 of the preplanned illegality. State v. Jackson, 87 Wash.App. 801, 818, 944 P.2d 403 (1997), aff'd on other grounds, 137 Wash.2d 712, 976 P.2d 1229 (1999).
¶ 15 Count 1 charged Mr. Gatlin with assault by intentional/reckless infliction of substantial bodily harm; count 2 charged him with assault by strangulation. M.W. testified Mr. Gatlin and Mr. Lambert both threatened that they were going to "kick my ass." RP at 112. Mr. Gatlin and Mr. Lambert came at M.W. together. Mr. Lambert pushed M.W. to the ground and began choking him. While Mr. Lambert had his arm around M.W.'s throat, Mr. Gatlin punched him. One of the boys then kicked M.W. while he was on the ground. Friends eventually separated the boys, but Mr. Lambert punched M.W. one last time. Later, Mr. Gatlin called one of M.W.'s friends and told him to tell M.W. that M.W. was, "a dead man." RP at 138.
¶ 16 Viewing this evidence in the light most favorable to the State, Mr. Gatlin acted as a principal by separately punching M.W. leaving facial bruising. Mr. Gatlin assisted Mr. Lambert's strangulation of M.W. The attack was a planned move by Mr. Gatlin and Mr. Lambert that resulted in a dog pile fight. Mr. Gatlin assisted in the strangulation by helping to subdue M.W. during the dog pile. Mr. Gatlin participated in kicking, punching, and yelling encouragement to Mr. Lambert after discovering M.W. when he had been hidden. A rational trier of fact could find Mr. Gatlin had general knowledge that he was encouraging or assisting in Mr. Lambert's assault on M.W. Thus, sufficient evidence exists to support Mr. Gatlin's other two second degree assault convictions.

B. Double Jeopardy
¶ 17 The next issue is whether Mr. Gatlin's convictions violate double jeopardy principles. He contends his convictions for gang intimidation and second degree assault are based on a single act.
¶ 18 We review double jeopardy claims de novo. State v. Turner, 169 Wash.2d 448, 238 P.3d 461 (2010) (citing State v. Kelley, 168 Wash.2d 72, 76, 226 P.3d 773 (2010)).
¶ 19 "Both our federal and state constitutions protect persons from being twice put in jeopardy for the same offense." Turner, 169 Wash.2d at 454, 238 P.3d 461; U.S. CONST. amend. V; CONST. art. I, § 9. This includes, "being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense." State v. Linton, 156 Wash.2d 777, 783, 132 P.3d 127 (2006). The prohibition against imposing multiple punishments for the same criminal conduct is raised here.
¶ 20 At issue in any double jeopardy analysis is whether the legislature intended to impose multiple punishments for the same event. In the Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004). Courts may discern the legislature's purpose by applying the tests set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("same elements test"). Under Blockburger, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. Under the Washington rule, double jeopardy attaches only if the offenses are identical in both law and fact, which is demonstrated when "`the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other.'" State v. Reiff, 14 Wash. 664, 667, 45 P. 318 (1896) (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)). The "same elements" test and the "same evidence" test are largely indistinguishable. Orange, 152 Wash.2d at 816, 100 P.3d 291.
¶ 21 Second degree assault and gang intimidation have different elements. The second degree assault elements relevant here are (1) an assault and (2) intent to commit a felony. RCW 9A.36.021(1)(e). An assault may consist of an intentional touching that is harmful or offensive; an act performed with the intent to inflict bodily injury but failing, *448 coupled with the apparent present ability to inflict the injury if not prevented; or an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which creates in another a reasonable apprehension and imminent fear of bodily injury. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 35.50, at 547 (3d ed.2008).
¶ 22 Gang intimidation, by contrast, consists of a threat to another person of bodily injury because the other person refuses to join a gang, if the person who threatens the victim or the victim attends or is registered in a public or alternative school. RCW 9A.46.120. A threat is a direct or indirect communication of the intent to cause bodily injury in the future. RCW 9A.04.110(27)(a) (formerly RCW 9A.04.110(25)(a) (1988)).
¶ 23 A plain language reading indicates our legislature intended to distinguish gang intimidation and second degree assault as distinct offenses. The intimidation statute specifically criminalizes threats to injure another, which, standing alone, are insufficient to establish an assault. Both offenses are set forth in different chapters of the Washington Criminal Code, title 9A RCW, and address different social concerns. Although assault addresses concerns about physical harm, gang intimidation aims to prevent invasion of individual privacy. These differences in aim and purpose, demonstrated by the legislature's establishment of different essential elements, indicate that gang intimidation and second degree assault do not constitute the same offense for purposes of double jeopardy.
¶ 24 Mr. Gatlin also argues the three assault convictions violate double jeopardy. But, each assault is based on different facts. As discussed above, one assault relates to bodily injury (punching/kicking) and one relates to strangulation. The last assault relates to gang intimation. Thus, double jeopardy is not implicated.

C. Bill of Particulars
¶ 25 The issue is whether Mr. Gatlin was denied due process of law based on an insufficient bill of particulars.
¶ 26 Criminal defendants "have a right to be apprised with reasonable certainty of the nature of the accusation against them so they may prepare an adequate defense." State v. Grant, 89 Wash.2d 678, 686, 575 P.2d 210 (1978). The function of a bill of particulars is to allow the defense to prepare for trial by providing it with sufficient details about the charge and eliminating surprise. State v. Noltie, 116 Wash.2d 831, 845, 809 P.2d 190 (1991). "Due process is satisfied when the defendant receives sufficient notice from the State to prepare a defense." State v. Powell, 167 Wash.2d 672, 682, 223 P.3d 493 (2009).
¶ 27 While Mr. Gatlin argues that mention of 4 Block Crips in the bill of particulars as a gang denied him due process, he alleges no prejudice, nor does he give any indication that he was unaware of what the State sought to prove. Both the original and amended informations contained the elements of criminal gang intimidation. As discussed above, 4 Block Crips was a subset of the larger 47 Deuce Crips. The bill of particulars incorporated the information and all police reports and discovery, which discussed local gangs. Mr. Gatlin had full knowledge that his involvement with both 4 Block Crips and Deuce 47 Crips would be issues at the fact finding. The court was not misled that it could find Mr. Gatlin guilty on any other theory than the one alleged in the bill of particulars. See State v. Peerson, 62 Wash. App. 755, 768, 816 P.2d 43 (1991) (court found bill of particulars sufficient even though it did not name the murder victims because jury instruction in no way permitted the jury to convict Mr. Peerson of aggravated murder on a theory different from that alleged in the bill of particulars).
¶ 28 Based on the above, Mr. Gatlin was able to prepare his defense without surprise. Thus, no due process violation occurred.
¶ 29 Affirmed.
WE CONCUR: KULIK, C.J., and KORSMO, J.