# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 54419-9-II |
|---|---|
| Respondent, | |
| v. | |
| JOHN ALLEN ROYBALL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — John Royball appeals his convictions and sentence for first degree assault and two counts of reckless endangerment. We hold that there was sufficient evidence for a reasonable jury to find Royball intended to inflict great bodily harm, and Royball fails to show that his counsel's performance prejudiced him. We also accept the State's concession that the trial court erred when it imposed a jury demand fee and a Department of Corrections (DOC) supervision fee. Accordingly, we affirm Royball's convictions and sentence and remand to strike the jury demand fee and DOC supervision fee.

## FACTS

### I. BACKGROUND

In September 2019, Sonia Pointer was staying with her mother Donna Karthauser at Karthauser's duplex in Kelso. John Royball lived in the other unit, next to Karthauser. Royball and Pointer never dated, but had kissed.

On the evening of September 20, Pointer invited Mark Rubon over. Pointer and Rubon had an on-again-off-again romantic relationship. Pointer and Rubon were sitting at a small table in a carport connected to the duplex in front of Karthauser's unit, drinking alcohol.

Royball arrived and parked his car in the carport. He had been drinking before he arrived. Royball got out of his car and flicked a cigarette that hit Rubon in the chest. Rubon got up and shoved Royball in the chest with both hands, knocking Royball to the ground. Rubon returned to his chair and Royball went into his unit.

Royball retrieved a 9mm pistol from his house but was unable to load it, so he got a .40 caliber pistol out of his closet and loaded it. He went outside and fired the gun three times "down the alleyway, or the breezeway" through the carport toward where Rubon was sitting. Verbatim Report of Proceedings (VRP) at 335. Rubon fled up a hill into the woods near the building while Royball continued firing shots.

Kelso police officers responded. After interviewing Rubon and Pointer, the officers arrested Royball in his residence.

The State charged Royball with one count of attempted first degree murder, one count of first degree assault, and two counts of reckless endangerment. The State also alleged facts to support firearm sentencing enhancements for the attempted murder and assault charges. The case proceeded to a jury trial in February, 2020.

## II. TRIAL

At trial, witnesses testified to the facts stated above. Additionally, Rubon testified that he saw "a round circle of sparks" coming out the end of the gun. Based on this and his past

experience, he believed the gun was pointed directly at him. After the second shot, he ran up a hill behind the house and took cover as Royball continued to shoot.

Police Detective Craig Christianson testified regarding the investigation he conducted into the events of September 20. The jury was shown photographs of the shooting scene. Detective Christianson testified as to gunfire analysis he conducted using lasers.

Detective Christianson testified that he found six empty casings at the scene. Using photo exhibits, Detective Christianson testified that of the six shots fired, three bullets hit the carport roof or rafters. He then testified that using a laser to track the trajectory of the holes in the carport, he was able to determine where the shooter had been standing. Based on this trajectory, Detective Christianson testified that the three shots that hit the carport were fired from a gun held horizontally from across the carport, not pointed into the air. Detective Christianson then testified that the increasing angle of the bullets' entry into the carport was consistent with a shooter experiencing the firearm recoil during rapid fire and the muzzle rising up. He testified that three bullets were unaccounted for.

Royball testified that due to the darkness, he could not see Rubon when he emerged from his residence with the pistol. He admitted that he fired the gun six times but testified that he was not aiming for Rubon; he wanted only to scare him off. He testified he was trying to fire between the roof of the house and the carport so that he would not hit anything.

The jury found Royball guilty of first degree assault and two counts of reckless endangerment, but found him not guilty of attempted first degree murder. The jury also returned a special verdict that Royball was armed with a firearm during the assault.

No. 54419-9-II

### III. SENTENCING

At sentencing, the State requested the low end of the standard sentencing range. Royball's counsel asked that "the Court find any leniency that it may find available to Mr. Royball." VRP at 440. He stated that it was an "alcohol-fueled incident" and asked the court "to make any reduction in the sentence that the Court finds appropriate." VRP at 440.

The court then reviewed possible mitigating factors available for "departures from the standard guidelines." VRP at 442-43. The court stated:

> So, if there's any mitigating factors to your case, and I'm reviewing those and there's about 15 or so. The first one deals with – it specifically says, 'To a significant degree the victim was an initiator, willing participant, aggressor, or provoker of the incident.' I think that that very well could apply in your situation.
>
> The second one does not apply, there was no compensation or anything done with the damages.
>
> The third one, that you were under duress, coercion, threat or compulsion that didn't constitute a full defense of self or others. I think that does sort of apply in this case. I did listen to all of the facts in this case. I am aware of the circumstances that were alleged, and really what led up to this, there really wasn't a whole lot of disagreement about.
>
> The remaining factors, (d) through (k) none of – none of those apply.
>
> So, I'm in a situation where two of 11 mitigating factors apply, and at this point I'm not sure that that's significant enough to deviate from the standard range sentence in this case. So, I am going to impose the 153 months, the low end of the standard range on Count II in this case.

VRP at 443.[1]

---

[1] The statutory factors the trial court reviewed are those from RCW 9.94A.535(1).

The trial court then added 36 months of community custody and required that Royball undergo substance abuse treatment.[2] Despite finding Royball indigent, the court imposed a crime victim assessment fee, jury demand fee, DNA collection fee, and the DOC supervision fees.

Royball appeals.

ANALYSIS

Royball argues that there was insufficient evidence to support his conviction for first degree assault and that he received ineffective assistance of counsel during sentencing. These arguments fail. The State concedes that the trial court erred when it imposed a jury demand fee and the DOC community supervision fee.

I. SUFFICIENT EVIDENCE

Royball argues that the State presented insufficient evidence to convict him of first degree assault because it did not prove that he acted with intent to inflict great bodily harm. We disagree.

To determine the sufficiency of the evidence, we view the evidence in the light most favorable to the State and assess whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Yishmael*, 195 Wn.2d 155, 177, 456 P.3d 1172 (2020). We draw all reasonable inferences in favor of the State and assume the truth of the State's evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, *Scanlan v. Washington*, 140 S.

---

[2] The trial court also imposed and suspended 364 days on each of the reckless endangerment convictions, to run concurrently with the assault conviction.

Ct. 834, 205 L. Ed. 2d 483 (2020). We do not review credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We consider direct and circumstantial evidence as equally reliable. *State v. Dillon*, 12 Wn. App. 2d 133, 140, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022 (2020).

RCW 9A.36.011(1)(a) provides: "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: . . . Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." "'Great bodily harm' means bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

Viewing the evidence in the light most favorable to the State, any reasonable jury could have found beyond a reasonable doubt that Royball intended to cause great bodily harm to Rubon. A gunshot can inflict death or permanent disfigurement. Royball admitted to firing the gun six times. Rubon saw a circle of sparks coming from the end of the gun, and testified that it appeared the firearm was pointed directly at him. This is supported by Detective Christianson's testimony that the three shots that hit the carport were fired from a gun held horizontally from across the carport toward Rubon and not pointed into the air.

Likewise, Detective Christianson testified that three bullets were unaccounted for, but that the increasing angle of the bullets' entry into the carport was consistent with a shooter experiencing the firearm recoil during rapid fire and the muzzle rising up. Viewing this evidence in the light most favorable to the State, it is reasonable to infer that Royball fired the six shots in

Rubon's direction, that he fired the first three shots at a lower trajectory, and that the muzzle of the gun rose as he fired each shot. Based on all the evidence, a reasonable jury could conclude that Royball shot the gun at Rubon and intended to cause great bodily harm as required by RCW 9A.36.011(1)(a).[3]

Firing a gun at a victim is sufficient evidence for a jury to find intent. *See*, *e.g.*, *State v. Hoffman*, 116 Wn.2d 51, 84-85, 804 P.2d 577 (1991) ("Proof that a defendant fired a weapon at a victim is, of course, sufficient to justify a finding of intent to kill."); *State v. Odom*, 83 Wn.2d 541, 550, 520 P.2d 152 (1974) (holding the jury was entitled to find intent to kill from the defendant firing a gun at the victims); *State v. Mann*, 157 Wn. App. 428, 440, 237 P.3d 966 (2010) (holding that the defendant firing his weapon at a police officer was sufficient evidence to support first degree assault conviction). Thus, our "courts hold that firing a gun is sufficient evidence of intent to cause great bodily harm." *State v. Alcantar-Maldonado*, 184 Wn. App. 215, 227, 340 P.3d 859 (2014) (summarizing the above cases).

Royball argues that *State v. Ferreira*, 69 Wn. App. 465, 468-69, 850 P.2d 541 (1993), holds that the firing of the weapon itself is not sufficient to show intent of great bodily harm. But *Ferreira* is distinguishable. There, the defendant fired at least 12 shots into a house during a drive-by shooting, wounding an occupant. *Ferreira*, 69 Wn. App. at 467. Division Three of this court held that there was insufficient evidence to support a finding of intent to inflict great bodily

---

[3] To the extent that Royball argues that this court should rely on his testimony that he merely wanted to chase Rubon away by firing into the air: this is a credibility determination that we do not review. *Camarillo*, 115 Wn.2d at 71. Moreover, we view all the evidence in the light most favorable to the State. *Yishmael*, 195 Wn.2d at 177.

harm because the State could not show that Ferreira knew that the house was occupied, only that it was "likely apparent that the house was occupied." *Ferreira*, 69 Wn. App. at 469. Here, Royball knew that Rubon was at the end of the carport at the table with Pointer. Thus *Ferreira* does not apply. We hold that there was sufficient evidence for a reasonable jury to find that Royball had the intent to inflict great bodily harm.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Royball argues that he received ineffective assistance of counsel during sentencing because his trial counsel did not argue certain legal authorities in support of an exceptional downward sentence. We disagree.

### A. *Legal Principals*

A claim of ineffective assistance of counsel presents a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance of counsel, Royball must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)). We may deem counsel's performance deficient if it is not objectively reasonable. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice is a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Gregory*, 192 Wn.2d 1, 22, 427 P.3d 621 (2018) (quoting *Strickland*, 466 U.S. at 694). The failure to

demonstrate either prong ends our enquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

B. *Statutory Factors*

Royball first argues that he received ineffective assistance when his trial counsel failed to argue for an exceptional downward sentence based on the statutory mitigating factors in RCW 9.94A.535(1). But Royball cannot show that he was prejudiced by his counsel's inaction.

In *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 265-66, 15 P.3d 719 (2001), the defendant argued that he received ineffective assistance when his trial counsel failed to cite to controlling case law to argue for an exceptional downward sentence. There, defense counsel asked for a sentence at the low-end of the standard range. *Hernandez-Hernandez*, 104 Wn. App. at 266. Division Three of this court held, "Assuming counsel was deficient, Mr. Hernandez–Hernandez cannot show the requisite prejudice. . . . The court had the discretion to impose an exceptional sentence downward with or without counsel's request; it did not. The prejudice, if any, was slight." *Hernandez-Hernandez*, 104 Wn. App. at 266.

Here the situation is much the same. Royball's counsel requested that the court use its discretion "to make any reduction in the sentence that the Court finds appropriate." VRP at 440. The trial court had discretion to impose an exceptional sentence downward. Moreover, the court demonstrated that it was aware of the statutory mitigating factors by reading them aloud and considering them during sentencing. Thus, it is evident from the record on appeal that the trial court properly used its discretion to impose the standard range sentence, as it had the discretion to do with or without Royball's request—or any further argument.

Royball argues that his counsel was deficient for not citing cases or presenting argument to the trial court to justify a departure below the standard range. He relies on *State v. McGill*, 112 Wn. App. 95, 101, 47 P.3d 173 (2002), where Division One of this court held that defense counsel was ineffective for not making an argument based on case law for an exceptional downward sentence. *McGill*, 112 Wn. App at 101. Division One noted, "A trial court cannot make an informed decision if it does not know the parameters of its decision-making authority." *McGill*, 112 Wn. App. at 102. But that is not the case here.

As explained above, the trial court here knew the parameters of its authority. It recited the potential mitigating factors from RCW 9.94A.535(1). Accordingly, the trial court was aware of its authority and properly exercised its discretion. Thus, Royball cannot show prejudice and his argument fails.

C. *Non-Statutory Factors*

Next, Royball argues that he received ineffective assistance of counsel when his trial counsel failed to argue for an exceptional downward sentence based on the non-statutory factor that Pointer created a love triangle and emotionally manipulated Royball. We disagree.

> In determining whether a factor legally supports departure from the standard sentence range, this Court employs a two-part test: first, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range; second, the asserted aggravating or mitigating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.

*State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997), *abrogated on other grounds by State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015). In *State v. Law*, our Supreme Court explained that under the second prong of the *Ha'mim* test, the mitigating factor "'must relate to

the crime and make it more, or less, egregious'" than crimes in the same statutory category. 154 Wn.2d 85, 98, 110 P.3d 717 (2005) (quoting *State v. Fowler*, 145 Wn.2d 400, 404, 38 P.3d 335 (2002)).

Here, the facts do not support Royball's theory of emotional manipulation. No evidence was admitted at trial of such manipulation. Royball denied being jealous of Rubon. He never testified he had dated Pointer, only that they had kissed. Moreover, even if Royball was romantically attracted to Pointer, on this record there is nothing that makes Royball's crime less egregious than other assaults based on a love triangle. Any argument that Royball's trial counsel would have made for a downward adjustment based on emotional manipulation would have failed under the second prong of the *Ha'mim* test. Accordingly, Royball cannot show prejudice because the result of the sentencing proceeding would not have been any different had his trial counsel raised this argument. Thus, we hold that Royball did not receive ineffective assistance of counsel.

### III. JURY DEMAND AND COMMUNITY SUPERVISION FEES

Royball argues that the trial court erred when it imposed legal financial obligations on Royball. He argues that because the trial court found him indigent, it was barred by *State v. Ramirez*, 191 Wn.2d 732, 739, 746-50, 426 P.3d 714 (2018), from imposing the jury demand fee and that the trial court should have used its discretion to waive the community supervision fee.

The State concedes that the trial court should not have imposed legal financial obligations, and we accept the State's concession.

No. 54419-9-II

We affirm Royball's convictions and sentence and remand to the trial court to strike the jury fee and DOC supervision fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Veljacic, J.

Price, J.