[No. 27317-2-III.   Division Three.   August 12, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JASON L. MANN, *Appellant*.

430

*Cece L. Glenn*, for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

¶1 KULIK, C.J. — Jason Mann, a passenger in a car stopped for a traffic violation, jumped out of the car and ran away, carrying a gun in his hand. He did not stop when the patrol officer told him to do so. Later, a backup officer followed Mr. Mann's footprints and found him in a backyard. The two exchanged gunfire. Mr. Mann was wounded and gave up. A jury found him guilty of first degree assault, second degree unlawful possession of a firearm, possession of a controlled substance—methamphetamine, and a dangerous weapon violation. The jury returned a special verdict

finding that the first degree assault was aggravated because Mr. Mann committed the offense against a law enforcement officer acting in his official capacity at the time of the offense, and that Mr. Mann knew or should have known the victim was a law enforcement officer.

¶2 Mr. Mann appeals his convictions and the special verdict finding aggravation. For the first time on appeal, he asserts that the officers did not have the authority to seize him and he argues that all evidence of the shooting should have been suppressed. He also contends that the evidence was insufficient to convict, and that the trial court erred by finding that his sentence was clearly too lenient considering the additional time added by the special finding of aggravation.

¶3 We review a claim of error raised for the first time on appeal only where the issue involves a manifest error affecting a constitutional right. Manifest error requires a showing of actual prejudice. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); RAP 2.5(a)(3). Because we conclude that the evidence of the shooting would not have been suppressed, no manifest error can be shown by Mr. Mann.

¶4 Accordingly, we affirm the convictions, the special finding of aggravation, and the sentence.

## FACTS

¶5 On December 28, 2007, at approximately 2:45 a.m., Deputy Tyler Smith stopped a vehicle for changing lanes without signaling. The vehicle pulled into a gas station and before it came to a complete stop, a man, later identified as Jason Mann, jumped from the passenger side of the vehicle and started running away. Deputy Smith told Mr. Mann to stop, but Mr. Mann did not comply. After Mr. Mann ran away, Deputy Smith put out a description of Mr. Mann and waited for backup.

¶6 Later, Deputy Jeff Thurman arrived as backup for Deputy Smith. He wore his sheriff's uniform with a sheriff's

patch on his sleeve. A sheriff's star and Deputy Thurman's name were on the front, and block letters spelling "sheriff" were on the back. Report of Proceedings (RP) at 72.

¶7 Because it was snowing, Mr. Mann left footprints in the snow as he ran away. Deputy Thurman followed these footprints south on South Thor Street and through an alley and eventually to a backyard at 320 South Ferrall Street.

¶8 Deputy Thurman entered the yard with his .45 Glock drawn. He could not see Mr. Mann because of debris in the yard. Deputy Thurman yelled, "Police. Come out." RP at 87. After yelling, Deputy Thurman observed a hand holding a handgun come out from behind a piece of plywood at the southeast portion of the yard. Deputy Thurman yelled to drop the gun. The hand turned toward him. Deputy Thurman shot in the direction of the hand so he could retreat and take cover in the northeast corner of the yard behind a tree. Deputy Thurman testified that the entire time he was yelling, "Show me your hands. Come out. Police." RP at 92.

¶9 Mr. Mann indicated he was giving up and coming out. Deputy Thurman testified that as Mr. Mann was crawling out from his cover and saying he was giving up, he fired his gun at Deputy Thurman. Deputy Thurman immediately started shooting at Mr. Mann, while keeping cover behind the tree. Eventually, Mr. Mann put up his hands, gave up, and was arrested. In a search following Mr. Mann's arrest, an officer found brass knuckles, a knife, .380 ammunition for Mr. Mann's pistol, and cartridges.

¶10 At trial, Mr. Mann admitted to running away from the traffic stop with the pistol in his hand because the safety on the pistol did not work and he did not believe it would be safe to run with the pistol in his pocket. He stated that he was running away because he had an outstanding warrant and he did not want to go to jail that night. Mr. Mann stated that he hid behind a piece of plywood in the yard. He heard someone enter the yard and he did not know for sure who it was, but he "pretty much guessed it

was the police." RP at 399. Mr. Mann testified that Deputy Thurman never identified himself as the police.

¶11 Mr. Mann denied pointing the gun or shooting at Deputy Thurman. Mr. Mann testified that he heard the person in the yard tell him to come out, and then he heard gunshots and felt them hit him. At that point, Mr. Mann testified that he threw his gun down, lay down on the ground, and surrendered.

¶12 Mr. Mann admitted to having a knife, brass knuckles, and methamphetamine. Mr. Mann testified that the gun must have discharged when he threw it on the ground.

¶13 When detectives processed the scene, they found two expended .380 caliber casings. One .380 bullet was recovered from a mattress that was leaning up against the tree in the northeast corner of the yard. The bullet's trajectory through the mattress was horizontal at approximately 16 inches off the ground.

¶14 The crime laboratory tested the pistol and found that the safety on the gun was inoperable and, therefore, the gun could fire whether the safety was on or off. Tests from the crime laboratory concluded that the .380 casings and bullet that were recovered from the scene were fired from the pistol. The pistol did not accidentally discharge at any point during testing at the crime laboratory.

¶15 A jury found Mr. Mann guilty of first degree assault, second degree unlawful possession of a firearm, possession of a controlled substance—methamphetamine, and a dangerous weapon violation. The jury returned a special verdict finding that the first degree assault was aggravated because Mr. Mann committed the offense against a law enforcement officer acting in his official capacity at the time of the offense, and that Mr. Mann knew or should have known the victim was a law enforcement officer.

¶16 The trial court sentenced Mr. Mann to the high end of the standard sentencing range on the assault conviction for his offender score of 7, which was 236 months. The trial court imposed 48 months for the aggravating circumstance,

and, with the mandatory 60-month deadly weapon enhancement, Mr. Mann's total sentence on the assault conviction was 344 months.

¶17 Mr. Mann appeals, asserting (1) the deputies did not have the authority to order Mr. Mann, a passenger, to remain at the scene of the traffic stop; (2) the State presented insufficient evidence to support first degree assault; (3) the State presented insufficient evidence to support the aggravating circumstance; and (4) the trial court erred by imposing an exceptional sentence that was clearly excessive.

## ANALYSIS

¶18 *Traffic Stop.* Mr. Mann, a passenger, asserts he was unlawfully seized when Deputy Smith ordered him to stop as he ran from a traffic stop. Mr. Mann raises this issue for the first time on appeal. We address an issue raised for the first time on appeal only if the issue raises a question involving manifest error affecting a constitutional right. RAP 2.5(a)(3). Here, the question of lawful seizure involves a constitutional right. We then address whether any error was manifest. *State v. O'Hara*, 167 Wn.2d 91, 100-01, 217 P.3d 756 (2009).

¶19 Under article I, section 7 of the Washington Constitution, a person is seized when an officer physically, or by show of authority, restrains a person's freedom of movement such that a reasonable person would not feel free to leave or to decline the officer's request and terminate the encounter. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003). The Washington standard for seizure is a completely objective one, which looks at the actions of the law enforcement officer. *Id.* (quoting *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998)).

¶20 Here, Mr. Mann was a passenger in a vehicle that was stopped for a traffic infraction. Before the vehicle came to a complete stop, Mr. Mann jumped out and started running. Deputy Smith told Mr. Mann to stop. In *State v. Mendez,*

officers stopped a vehicle for a traffic infraction. *State v. Mendez*, 137 Wn.2d 208, 970 P.2d 722 (1999), *abrogated by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Both the driver and passenger got out of the vehicle. One of the officers ordered the passenger to get back in the car. The Washington Supreme Court concluded that the passenger was seized. *Id.* at 222-23. In *Brendlin*, the United States Supreme Court held that both the driver and the passengers are seized under the Fourth Amendment when a vehicle is stopped for a traffic infraction.

¶21 Mr. Mann's situation is factually similar to *Mendez*. Here, Mr. Mann was seized when Deputy Smith told him to stop. *See Young*, 135 Wn.2d at 509-10.

¶22 Unless an officer can point to specific and articulable facts supporting the substantial possibility that criminal conduct has occurred, or is about to occur, the officer has no grounds to detain and question passengers. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986); *see also State v. Afana*, 169 Wn.2d 169, 233 P.3d 879 (2010).

¶23 At trial, Deputy Smith testified that he was turning in to the gas station when he saw the passenger door open and the passenger jump from the vehicle and start running. Deputy Smith stated that the driver committed the infraction. Deputy Smith did not claim that Mr. Mann posed a threat to officer safety at the scene of the traffic stop.

¶24 When Deputy Thurman arrived later, he followed Mr. Mann's footprints in the snow to a fenced yard. With gun drawn, he entered the yard, yelling, "Police. Come out." RP at 87. After he saw a hand holding a gun behind some wood, he continuously yelled, "Show me your hands. Come out. Police." RP at 92. Mr. Mann shot at Deputy Thurman, eventually gave up, and was arrested.

¶25 Arguably, Mr. Mann is correct that under the Washington Constitution and case law, he was unlawfully seized. But Mr. Mann must show a motion to suppress would have been granted had it been made in the trial court.

*McFarland*, 127 Wn.2d at 334 n.2. He does not make that showing. Mr. Mann cannot respond to unlawful police conduct by shooting at the police. In *State v. Valentine*, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997), the court rejected the common law rule and held that a person cannot respond with criminal conduct to illegal police behavior.

¶26 A person who is being unlawfully arrested has a right to use reasonable and proportional force to resist injury from an officer during an arrest, but the person may not do so when faced only with a loss of freedom. *Id.* Significantly here, Mr. Mann ran from the police to avoid arrest on an outstanding warrant.

¶27 When Deputy Thurman chased Mr. Mann and then ordered him to come out of the yard, Mr. Mann was faced only with a loss of freedom. Even though the seizure was unlawful, Mr. Mann committed an illegal act when he shot at Deputy Thurman. Here, the unlawful seizure did not absolve Mr. Mann from culpability for the criminal act of shooting at Deputy Thurman. As the *Valentine* court said:

> To endorse resistance by persons who are being arrested by an officer of the law, based simply on the arrested person's belief that the arrest is unlawful, is to encourage violence that could, and most likely would, result in harm to the arresting officer.

*Id.*

¶28 Mr. Mann shot at Deputy Thurman when faced only with a loss of his freedom. We conclude that any error is not manifest because the act of shooting at the officer was not suppressible evidence. Accordingly, Mr. Mann suffered no prejudice.

■ ■ ¶29 *Sufficiency of the Evidence—First Degree Assault.* The test for sufficiency of the evidence is whether, when all reasonable inferences are drawn in favor of the State, any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When an appellant asserts insufficient evidence, he or she admits the truth of the State's evidence, as well as all reasonable inferences that can be drawn from

that evidence. *Id.* Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶30 To convict Mr. Mann of first degree assault, the State had to prove that Mr. Mann intended to inflict great bodily harm by assaulting Deputy Thurman with a firearm. RCW 9A.36.011(1)(a).

¶31 Mr. Mann asserts that the evidence failed to show he intended to inflict great bodily harm to Deputy Thurman. "A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime." Former RCW 9A.08.010(1)(a) (1975). In *State v. Hoffman,* 116 Wn.2d 51, 84-85, 804 P.2d 577 (1991), the court held that proof that a defendant fired his weapon at a victim was sufficient to justify a finding of intent to kill. The intent to kill encompasses the intent to inflict great bodily harm; therefore, it follows that if a defendant fires his or her weapon at a victim, it is reasonable to infer that the defendant intended to inflict great bodily harm.

¶32 Here, Deputy Thurman testified that he saw Mr. Mann's hand holding the gun and pointing it in his direction. Deputy Thurman ordered Mr. Mann to surrender and Mr. Mann crawled out from behind his cover; however, while crawling, Deputy Thurman testified that Mr. Mann fired his weapon in the deputy's direction. Deputy Thurman took cover behind a tree. The State presented evidence that two .380 caliber casings found at the scene of the shooting were from Mr. Mann's gun. The State also showed that a .380 bullet was recovered from a mattress that had been leaning against the tree where Deputy Thurman had taken cover. The bullet strike was approximately 16 inches off the ground and the trajectory of the bullet was horizontal.

¶33 Mr. Mann asserts he threw his gun and it misfired. However, his theory does not explain why two .380 casings were found, as opposed to one, or why the bullet recovered from the mattress entered and exited horizontally at approximately 16 inches off the ground.

¶34 In short, the evidence shows Mr. Mann fired his gun in the direction of Deputy Thurman, from 16 inches off the ground, which means the gun could not have misfired when it hit the ground. *Hoffman* stated that intent to kill could be inferred from a defendant firing his weapon at a victim. *Id.* The State presented sufficient evidence that Mr. Mann intended to inflict great bodily harm by firing his weapon at Deputy Thurman and, thus, presented sufficient evidence to support the first degree assault conviction.

¶35 *Sufficiency of the Evidence—Aggravating Circumstances.* Mr. Mann also asserts that the aggravating circumstance relating to the assault conviction should be reversed. He argues he did not know that the other person in the yard was a law enforcement officer. The jury found that Mr. Mann knowingly committed an offense against a law enforcement officer.

¶36 RCW 9.94A.535 provides in part that the court may impose a sentence outside the standard range if it finds substantial and compelling reasons to do so. RCW 9.94A-.535(3)(v) lists as one aggravating circumstance "[t]he offense was committed against a law enforcement officer [and] the offender knew that the victim was a law enforcement officer." Mr. Mann contends that he did not know the other person in the yard was a law enforcement officer.

¶37 Mr. Mann testified that he "pretty much guessed it was the police" in the yard with him. RP at 399. In addition, Deputy Thurman also testified that he identified himself as the police and told Mr. Mann to come out. Deputy Thurman observed a hand with a gun pointing at him, so he shot in that direction and retreated to take cover behind a tree. Mr. Mann indicated he was surrendering and started to crawl out from behind his cover. Deputy Thurman came out from behind the tree to contact Mr. Mann, and Mr. Mann fired at Deputy Thurman. Deputy Thurman was wearing his uniform. Mr. Mann had just run from a traffic stop. The evidence presented by the State would support a reasonable

juror's finding that Mr. Mann knew Deputy Thurman was a law enforcement officer.

■ ¶38 *Exceptional Sentence—Clearly Excessive.* A sentence outside the standard range may be reversed if the reviewing court finds that the sentence imposed was clearly too excessive. RCW 9.94A.585(4)(b). Whether a sentence is clearly too excessive is reviewed for an abuse of discretion. *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986). A trial court abuses its discretion if its decision is based on manifestly unreasonable or untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ ¶39 Mr. Mann assigns error to findings of fact 3 and 6, and conclusions of law 1, 4, 5, and 6 in the court's written findings supporting his exceptional sentence. This court reviews challenged findings of fact for substantial evidence and then determines if the findings support the conclusions of law. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). "Substantial evidence" is evidence sufficient to persuade a rational, fair-minded person that the fact is true. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

¶40 Finding of fact 3 states that the jury found beyond a reasonable doubt the aggravating factor that Mr. Mann assaulted a law enforcement officer performing his official duties. This finding is supported by substantial evidence as analyzed above.

¶41 There does not appear to be a finding of fact 6. For purposes of review, we assume Mr. Mann has assigned error to conclusions 1, 4, 5, 6, and 7.

■ ¶42 Conclusion of law 1 states that the trial court has discretion to determine if the jury's findings are substantial and compelling reasons to justify an exceptional sentence. The trial court cites *State v. Suleiman*, 158 Wn.2d 280, 292-93, 143 P.3d 795 (2006), which supports the trial court's conclusion, stating that while the jury must find the facts supporting an exceptional sentence, the court must

determine whether the facts found were sufficient to warrant an exceptional sentence.

¶43 Conclusion of law 4 states that a "sentence above the standard range is in the interest of justice and is consistent with the purposes of the Sentencing Reform Act[ of 1981, ch. 9.94A RCW]." Clerk's Papers (CP) at 193. Conclusion of law 5 states, "The imposition of an exceptional sentence under Count 1 [first degree assault] is appropriate to ensure that the punishment is proportionate to the seriousness of the offense." CP at 194. Conclusion of law 6 states that the court incorporates its oral findings and conclusions. And lastly, conclusion of law 7 states that "[t]he standard range plus the deadly weapon enhancement is clearly too lenient." CP at 193.

¶44 Here, given Mr. Mann's offender score of 7, the first degree assault charge had a standard range of 178 to 236 months. Applying the mandatory 60-month deadly weapon enhancement, the total standard range is 237 to 296 months. The trial court noted that Mr. Mann had a significant felony history and did not merit the low end of the sentencing range. The trial court sentenced Mr. Mann to 236 months for first degree assault. Adding the mandatory 60-month deadly weapon enhancement increased his sentence to 296 months. The trial court imposed an additional 48 months for the aggravating factor for a total sentence of 344 months.

¶45 Mr. Mann's sentence is supported by the record. He had a deadly weapon. The jury found that Mr. Mann assaulted a law enforcement officer who was performing his official duties. Mr. Mann fails to show that the trial court abused its discretion by imposing an exceptional sentence.

¶46 We affirm the convictions, the special finding of aggravation, and the sentence.

SWEENEY and SIDDOWAY, JJ., concur.