# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58980-0-II |
| Respondent, | |
| v. | |
| AARONDEEP SINGH JOHAL, | PUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Aarondeep Johal appeals his conviction of felony harassment-death threats.[1]  The conviction arose out of an incident in which Johal threatened to kill his six-week-old child after being confronted by officers responding to a domestic violence report.  The information identified both the child and the responding officers as victims of the harassment.

After a bench trial, the trial court found that Johal's threat to kill his child placed the officers on the scene in reasonable fear the threat would be carried out.  Johal argues that the evidence is insufficient to support his conviction because the harassment statute requires the State to show that Johal's child, not the officers, reasonably feared the threat would be carried out.

---

[1] Johal also was convicted of other offenses, but he does not appeal those convictions.

We hold that because the officers were victims of the harassment, the trial court's finding that they were placed in reasonable fear that the threat to kill SJ would be carried out supports Johal's conviction. Accordingly, we affirm the felony harassment-death threats conviction.

FACTS

Johal and his former partner Thalia Rivera dropped off their six-week-old child, SJ, with a friend. Later that night, after an apparent dispute, Rivera walked into a convenience store. Johal later entered the store and dragged Rivera out. Around 2:00 AM, Johal arrived at the friend's house and insisted on taking SJ home. Johal took the baby to his apartment.

Vancouver police were dispatched to Johal's apartment. When officers arrived, Rivera exited and they escorted her away. The officers believed that SJ still was inside the apartment.

Several officers entered the apartment. Johal was holding SJ, and using profanity he yelled for the officers to leave his apartment. Johal then picked up a hammer, drew his arm back, and said that he was going to kill SJ. Johal eventually put down the hammer, but he then started walking toward the balcony and yelled that he was going to throw SJ off the balcony. Officers stopped him from getting to the balcony and eventually removed SJ from Johal's arms.

The State charged Johal with felony harassment-death threats, felony violation of a domestic violence court order, first degree kidnapping, third degree assault, and attempted first degree assault. On the felony harassment-death threats charge, the State's information charged:

> That he, AARONDEEP S JOHAL, in the County of Clark, State of Washington, on or about October 10, 2021, knowingly and without lawful authority, did threaten to kill another, immediately or in the future, to-wit: S.J. . . . and/or *Vancouver Police Department Corporal Gregory Catton, and/or Vancouver Police Department Corporal William Pardue, and/or Vancouver Police Department Officer Justin Reiner*, or any other person; and the Defendant, by words or conduct, placed the person threatened in reasonable fear that the threat would be carried out, contrary to Revised Code of Washington 9A.46.020(1)(a)(i), (1)(b), and (2)(b)(ii).

Clerk's Papers (CP) at 66 (emphasis added).

At the bench trial, officers Roger Evans, Justin Reiner, Gregory Catton, and William Pardue testified to the facts recited above. Evans testified, "[Johal] raised the hammer. He drew it back as if he was going to swing it in a very threatening manner toward the child and said something to the effect of, 'I'm going to kill the kid.' " Rep. of Proc. at 309. Evans believed that SJ was very much in danger when Johal threatened to kill her with the hammer. Reiner testified that Johal held the hammer with the head pointed toward SJ's head and was making downward motions with the hammer. Reiner believed that Johal was going to hit SJ with the hammer. Pardue testified that he believed that Johal was attempting to kill SJ with the hammer and that SJ's life was in danger when Johal threatened to throw her off the balcony.

The trial court found Johal guilty of multiple felonies, including felony harassment-death threats. Regarding the felony harassment-death threats charge, the court orally found that Johal threatened to kill SJ and that the officers heard the threat and reasonably believed that Johal would use the hammer to kill SJ. However, the trial court did not enter written findings of fact and conclusions of law.

After Johal appealed, we stayed the appeal and remanded to the trial court for entry of written findings of fact and conclusions of law.[2] Written findings and conclusions now have been entered which follow the facts as described above.[3] The court made the following finding:

The Defendant became angry and yelled at the officers to leave. He picked up a

---

[2] CrR 6.1(d) states, "In a case tried without a jury, the court shall enter findings of fact and conclusions of law." The proper course when the trial court fails to comply with CrR 6.1(d) is to remand for entry of findings and conclusions, which we did. *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998). We reiterate again that it is the responsibility of the trial court – generally with the assistance of the prosecutor – to ensure entry of written findings of fact and conclusions of law after a bench trial.

[3] Johal did not assign error to the trial court's findings of fact or conclusions of law after being given the opportunity after the findings were filed.

hammer from the kitchen, drew his arm back, and said he was going to kill the baby. Corporal Pardue, Corporal Catton, and Officer Reiner heard the Defendant threaten to kill the baby and believed he would use the hammer to kill the baby. Their belief was reasonable under the circumstances.

CP at 231.

Johal appeals his conviction of felony harassment-death threats.

ANALYSIS

Johal argues that the State presented insufficient evidence to convict him of harassment-death threats because the State was required to prove that SJ, not the officers, was placed in reasonable fear that his threats would be carried out. We disagree.

A.    STANDARD OF REVIEW

The test for determining sufficiency of evidence for a conviction is whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt viewing the evidence in the light most favorable to the State. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). For a bench trial, "appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). Unchallenged findings of fact are verities on appeal. *Id.* at 106.

B.    LEGAL PRINCIPLES

Under RCW 9A.46.020(1), a person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:
    (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; [and]
. . . .
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

4

Harassment is a gross misdemeanor unless the harassment involves "threatening to kill the person threatened or any other person." RCW 9A.46.020(2)(b)(ii). Harassment involving a death threat is a class C felony. RCW 9A.46.020(2)(b).

To sustain a conviction for harassment, "RCW 9A.46.020 requires that the State prove that the person threatened was placed in reasonable fear that the threat to kill would be carried out." *State v. C.G.*, 150 Wn.2d 604, 612, 80 P.3d 594 (2003). The question here is who constitutes the "victim" of harassment for purposes of RCW 9A.46.020(1).[4]

C.     VICTIM OF HARASSMENT

Johal argues that the victim of the harassment must be the person the defendant threatens to injure or kill, and that third parties who are not threatened with injury or death cannot be victims of harassment. He claims that the person threatened with injury or death – here, SJ – must be placed in reasonable fear that the threat will be carried out to support a harassment conviction.

The statutory language does not support this interpretation. RCW 9A.46.020(1)(a) expressly states that a person is guilty of harassment if they threaten to cause bodily injury to "the person threatened *or to any other person*." (Emphasis added.) This language establishes that the harassment victim and the person threatened with bodily injury need not be the same person. In other words, a defendant may harass one person by threatening to injure another person. The Supreme Court confirmed this understanding in *State v. J.M.*: "The statute also

---

[4] After Johal was convicted but during this appeal, the United States Supreme Court decided *Counterman v. Colorado*. 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). The Court held that the First Amendment requires that in order to establish a "true threat," the State must prove the defendant had a subjective understanding of the threatening nature of his statements with mental state of recklessness. *Id.* at 69. Johal cites *Counterman* in his reply brief, but only to argue that affirming his conviction may cause a "chilling effect." Reply Br. at 8. Therefore, we do not address whether Johal's statements were "true threats" under *Counterman*.

contemplates that a person may be threatened by harm to another. An example that comes readily to mind is a communication of intent to harm the child of the person threatened." 144 Wn.2d 472, 488, 28 P.3d 720 (2001).

The court in *State v. Morales*, 174 Wn. App. 370, 298 P.3d 791 (2013), reached the same conclusion. The court quoted the above passage from *J.M.* and then noted that a person threatened under RCW 9A.46.020(1)(a) is someone who is the target of coercion, intimidation or humiliation. *Id.* at 380. The court stated, "As the court's hypothetical [in *J.M.*] points out, the target of coercion or intimidation when a parent is threatened with bodily injury to a child can clearly be the parent. If so, the second element of the State's case would require proof that the parent, not the child, was reasonably placed in fear." *Id.*

We recognize that the statements in both *J.M.* and *Morales* are dicta, as neither case involved one person witnessing a threat to injure another person. But we agree with the statements in those cases.

Johal argues that *State v. Kiehl*, 128 Wn. App. 88, 113 P.3d 528 (2005), compels a different conclusion. In that case, the defendant told his mental health counselor that he was going to kill a judge. *Id.* at 90. The counselor called the judge and reported the threat. *Id.* at 91. However, the State presented no evidence that the judge was placed in reasonable fear that the threat would be carried out. *Id.* Although the only victim referenced in the information was the judge, the trial court instructed the jury that they could convict if the counselor was placed in reasonable fear that the threat would be carried out. *Id.* at 91-92.

The appellate court reversed the harassment conviction based on sufficiency of the evidence. *Id.* at 94. The court stated, "[T]he harassment statute requires that the person threatened learn of the threat and be placed in reasonable fear that the threat will be carried out."

6

*Id.* at 93. *As charged*, the judge was the only person threatened. Therefore, the jury should have been instructed that the State was required to show that the judge – not the counselor – was placed in reasonable fear that the threat would be carried out. *Id.* at 93-94. And because there was no evidence concerning the judge's fear, the evidence was insufficient.

*Kiehl* is distinguishable. The key fact in that case was that the counselor was not named as a victim of harassment in the information; only the judge was. Here, the information expressly stated that officers Catton, Pardue, and Reiner were victims of the harassment. Although inartfully drafted, the information can be read as stating that the officers were threatened by Johal's statement that he would kill SJ.

Johal also argues that allowing people other than the person threatened with bodily injury to be victims of harassment would lead to absurd results. He points out that under this interpretation, first responders, witnesses, and bystanders could be harassment victims.

But our interpretation of the RCW 9A.46.020(1) is guided by the harassment statute's legislative findings. In *J.M.*, the Supreme Court referenced RCW 9A.46.010, which is a legislative finding regarding the harassment statutes. 144 Wn.2d at 485. RCW 9A.46.010 states that "this chapter is aimed at making unlawful the repeated invasions of a person's privacy by acts and threats which show a pattern of harassment *designed to coerce, intimidate, or humiliate the victim*." (Emphasis added.) As noted above, the court in *Morales* suggested that a person threatened under RCW 9A.46.020(1)(a) is someone who is the target of coercion, intimidation or humiliation. 174 Wn. App. at 380. A first responder, witness, or bystander generally would not be so targeted.

Here, a rational trier of fact could determine that Johal's threats to kill SJ were both directed at and an attempt to coerce or intimidate the officers on the scene. He wanted the

officers to leave his apartment and to abandon their attempt to arrest him, and threatening to kill SJ was his way of accomplishing that end. Therefore, based on RCW 9A.46.010, the officers were the "person[s] threatened" under RCW 9A.46.020(1)(a).

We hold that based on the offense as charged, the officers in this case could be victims of harassment under RCW 9A.46.020(1)(b) even though Johal threatened to kill SJ. As a result, the trial court properly addressed under RCW 9A.46.020(1)(b) whether the officers were placed in reasonable feared that the threat to kill SJ would be carried out.

D.     TRIAL COURT'S FINDINGS

Based on our interpretation of RCW 9A.46.020(1)(a), the only remaining issue is whether substantial evidence supports the trial court's findings that Johal threatened to kill SJ and that the officers were placed in reasonable fear that the threat would be carried out. Johal does not challenge these findings. Therefore, they are verities on appeal. *Homan*, 181 Wn.2d 102, 105-06. We hold that the State presented sufficient evidence to convict Johal of felony harassment-death threats.

CONCLUSION

We affirm Johal's conviction for felony harassment-death threats.

MAXA, P.J.

We concur:

GLASGOW, J.

PRICE, J.

8