IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, <br><br> Respondent, <br><br> v. <br><br> P.N., <br><br> Appellant. | No. 88138-8-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

HAZELRIGG, C.J. — P.N. appeals from the disposition order and findings of fact and conclusions of law entered after a bench trial and asserts insufficient evidence was presented to support his convictions for two counts of robbery in the first degree and one count of assault in the first degree. We disagree and affirm.

FACTS[1]

Between 9 a.m. and 11 a.m. on September 16, 2023, a Hyundai Elantra was stolen from outside a business located on South Union Avenue in Tacoma, Washington. Thus launched a spree of robberies across the city that spanned approximately the next 28 hours.

The first robbery was reported that afternoon at 1:42 p.m., when Michael Ford called 911 to report that he had been robbed of a gold necklace by three individuals in a vehicle that matched the description of the stolen Elantra. Ford

---

[1] These facts are taken from the unchallenged findings entered by the court at the conclusion of the bench trial. "Unchallenged findings are verities on appeal." *State v. Johal*, 33 Wn. App. 2d 408, 413, 561 P.3d 1235, *review denied,* 4 Wn.3d 1028 (2025).

reported that one of the occupants of the vehicle pointed a silver revolver at him and demanded his property, and he relinquished a gold necklace. Ford described the driver of the car as a Hispanic individual with a bandana around his face. He described the front passenger as Asian with orthodontic braces and the backseat passenger as a White male.

Around 9 p.m. that evening, a video was posted on Instagram[2] that showed River Anderson and Ralphe Manuma in the stolen Elantra in Tacoma, wearing clothing that was later identified in surveillance footage or located when they were apprehended by law enforcement. Anderson was in the driver's seat and Manuma was in the back seat. An unidentified person wearing black clothing was seated in the front passenger's seat.

The next morning, September 17, at about 5:20 a.m., the stolen Elantra arrived at a gas station located on North 26th Street in Tacoma. Anderson exited the driver's seat of the car, entered the gas station, and purchased water. Anderson left the gas station, returned to the driver's seat of the Elantra, and drove away. Anderson drove around the block two times, circling the store, and then pulled back into the gas station parking lot, near the entrance to the store.

P.N., 14 years old at the time, exited the front passenger seat of the Elantra and entered the store. P.N. wore a "black Adidas sweatshirt with a stripe down the side, black sweatpants, a black mask, and black shoes." Anderson exited the driver's seat, went to the door of the store, and held it open. P.N. walked up to the cashier, Penitito Tanielu Seuao,[3] pulled out a silver snub-nosed revolver and

---

[2] "Instagram" is an Internet-based photo and video sharing social networking platform.
[3] While much of the record, including the trial court's findings and conclusions, refers to

demanded money from him. Tanielu Seuao did not comply. P.N. and Anderson exited the store and ran back to the Elantra. Tanielu Seuao grabbed an orange baseball bat and chased them to the vehicle.

Anderson entered the driver's seat, and P.N. occupied the front passenger seat of the Elantra. Tanielu Seuao hit the passenger side of the Elantra multiple times with the orange bat, near where P.N. was sitting. The Elantra quickly pulled out of the gas station parking lot and circled the block. Tanielu Seuao was standing outside when the vehicle passed by for a second time, and he engaged in conversation with the occupants. Security footage from the gas station that was later admitted at trial showed that at roughly 5:30 a.m. P.N. fired a silver snub-nosed .357 revolver from inside the car at Tanielu Seuao. The gunshot struck the glass above Tanielu Seuao's head, which caused him to retreat back into the store.

By approximately 6:15 a.m., P.N. and his accomplices had abandoned the Elantra about one mile away from the gas station. Fingerprints belonging to Anderson and Manuma were later recovered from the vehicle. The same group of individuals who had stolen the Elantra and used it in the crimes at the gas station then stole a Hyundai Sonata from a location about four blocks away from where the Elantra was ultimately abandoned. There was an extendable black baton in the stolen Sonata that belonged to the owner of the car.

Sometime after 9 a.m., Almand Newton was working in his yard near South Mullen and South 62nd in Tacoma. Newton was wearing two gold necklaces that would have been visible to others as he worked in the yard. The stolen Sonata

---

this victim as Seuao, the report of proceedings suggests that he identified his last name as Tanielu Seuao. Accordingly, we will follow his preference.

pulled up in front of his house and the driver, later identified as Manuma, and the front passenger exited the vehicle. Manuma pointed the same silver snub-nosed revolver that P.N. had used in the gas station incidents at Newton. The person who had exited from the front passenger seat of the car approached Newton behind the driver and held up an extended black baton; the trial court expressly found that this person "was wearing a dark or black balaclava face covering, medical gloves, and had tanner skin than the driver." While the passenger pointed the baton toward Newton, Manuma displayed the gun at him and demanded Newton's gold necklaces, which he relinquished. Newton described the individuals as being in their late teens or early twenties.

At around 2:08 p.m., Clifford Hebert called 911 to report that he had been robbed about 10 minutes earlier at gunpoint near Pacific Avenue in Tacoma. Hebert reported that four "Asian-appearing males" pulled up in what was later identified as the stolen Sonata as he was walking his one-year-old son in a stroller on the side of the road. Some of the occupants of the car were wearing masks. The men in the car pulled out two firearms, including the same silver snub-nosed revolver that was used in the crimes at the gas station and the robbery of Newton, threatened Hebert, and demanded his two gold necklaces, which he turned over.

At approximately 2:40 p.m., officers from the Tacoma Police Department (TPD) began a pursuit of the stolen Sonata. P.N., Anderson, and Manuma were in the Sonata and led the police on a car chase. P.N. was in the front passenger seat, Anderson was driving, and Manuma was in the back seat. The Sonata crashed into another car, and the occupants fled on foot.

As he ran away, P.N. was wearing black sweatpants and black shoes that matched the sweatpants and shoes he was wearing in the gas station surveillance videos. P.N. shed these clothing items as he fled, and TPD officers found them in the path of pursuit. One of the officers involved in the foot pursuit later testified, and the court found, that P.N. "fled as if he was concealing a gun in his clothing." In the path of P.N.'s pursuit, TPD officers found the silver snub-nosed .357 revolver used in the robberies of Newton, Hebert, and the crimes at the gas station.

When P.N. was apprehended, he was wearing gold necklaces that were later determined to be those stolen from Ford and Newton. Officers found the black Adidas sweatshirt P.N. wore during the gas station robbery on the floor of the front passenger compartment of the stolen Sonata. Officers also located a cell phone in the path of the foot pursuit that was determined to belong to Manuma; the phone's location tracking data later revealed that Manuma's phone was in the proximity of the robberies and the crimes at the gas station.

P.N. was charged in Pierce County Juvenile Court with three counts of robbery in the first degree, all with firearm enhancements, for the robberies of Ford, Hebert, and Newton, and one count of obstructing a law enforcement officer for his actions while fleeing the police. Related to the crimes at the gas station, P.N. was charged with one count each of attempted robbery in the first degree, drive-by shooting, and assault in the first degree. The robbery and assault charges also carried firearm enhancements.

After the conclusion of the bench trial that occurred over eight days in August and September 2024, the judge issued written findings of fact and

conclusions of law. P.N. was convicted of all counts except the robbery of Ford, for which the judge concluded there was insufficient evidence of P.N.'s involvement. The judge entered a disposition order that imposed a commitment of 150 weeks of institutional placement but did not impose any additional time for the firearm enhancements after finding a manifest injustice basis for an exception under the juvenile justice act.[4]

P.N. timely appealed.


ANALYSIS

I.      Standard of Review & Legal Standards

P.N. argues that his convictions for the robberies of Newton and Hebert and his conviction for the assault of Tanielu Seuao should be reversed because the State presented insufficient evidence to support them.

In presenting a claim of insufficient evidence on appeal, "the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). "Inferences are drawn in the State's favor." *Id.* "The conviction will be upheld if any rational fact finder could have found the essential elements beyond a reasonable doubt." *Id*. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Id*. at 234. "Circumstantial evidence and direct evidence are equally reliable when determining the sufficiency of the evidence." *Id*. at 237.

---

[4] Ch. 13.40 RCW.

- 6 -

"We review challenges to a trial court's conclusions of law de novo." *Id*. "Unchallenged findings of fact are verities on appeal." *State v. Johal*, 33 Wn. App. 2d 408, 413, 561 P.3d 1235, *review denied,* 4 Wn.3d 1028 (2025).

II.     Sufficiency of the Evidence for Robberies of Newton and Hebert

P.N. specifically argues that his convictions for the robberies of Newton and Hebert should be reversed because there was insufficient evidence that he was present during those robberies.

P.N. does not dispute that he was present during the crimes committed at the gas station and during the police chase that occurred approximately 9 hours later. His argument here is simply that the approximately 9 hours between those events gave him "ample opportunity to disengage and reengage with Manuma and Anderson during the day" and the State's evidence was insufficient to show that he was present with them during the robberies of Newton and Hebert. Viewed in the light most favorable to the State, however, a rational fact finder could have found beyond a reasonable doubt that P.N. was present at the robberies of Newton and Hebert.

As a preliminary matter, some of the State's evidence served the dual purpose of proving P.N.'s presence at the scenes of both the Newton and Hebert robberies. First, both Newton and Hebert were robbed using the same silver snub-nosed .357 revolver that P.N. used in his attempt to rob Tanielu Seuao and then to shoot at him at the gas station earlier that same day. There is evidence that P.N. was still in possession of this revolver after the Newton and Hebert robberies because, as set out in unchallenged finding of fact 43, P.N. fled police "as if he

was concealing a gun in his clothing," and police officers found the revolver in his path of pursuit. Second, both robberies were committed using the same stolen Sonata in which P.N. was found by police just one mile away and 40 minutes after the Hebert robbery. Third, there was evidence that P.N. was with the same accomplices, Anderson and Manuma, committing crimes in both of the stolen cars before and after the Newton and Hebert robberies: Anderson was identified in the footage captured at the gas station crimes and Manuma's cell phone location data put him at the gas station at the time of the crimes; Manuma was identified by Newton as the gunman who robbed him; and both Manuma and Anderson were in the car with P.N. when law enforcement pursued them. Fourth, Newton and Hebert were both robbed in a similar manner; they were held at gunpoint and made to hand over their gold necklaces.

In addition to the evidence that applied to both of the crimes involving Hebert and Newton, the State presented evidence specific to each robbery in order to establish P.N.'s presence. Focusing only on the Newton robbery, Newton described the person who exited the front passenger seat of the Sonata wielding the extended baton as having a "[s]lightly tannish" complexion, dressed in all black with a black mask and blue medical gloves, and shorter than the gun-wielder. This description matches the clothing and mask that P.N. was identified wearing during the crimes at the gas station and the clothes and gloves that P.N. wore during the police chase and at his arrest. Newton said that this individual exited the car from the front passenger seat of the Elantra, where P.N. had been sitting throughout the gas station crimes and during the police chase in the Sonata. When he was

apprehended by police, P.N. was wearing one of the gold necklaces stolen from Newton.

As to the Hebert robbery, Hebert described in his 911 call that the stolen Sonata was occupied by four "Asian[-]appearing males," all dressed in black, some masked, again consistent with the clothing and mask P.N. was identified wearing throughout the day. The trial court found that P.N., Anderson, and Manuma "are all Pacific Islander. The term Asian can be a broad racial category, which may include Pacific Islander." Thus, Hebert's admittedly broad physical description of "Asian-appearing males" could describe P.N., Manuma, and Anderson. P.N., Manuma, and Anderson were found by police in the stolen Sonata only about one mile from where Hebert was robbed approximately 40 minutes after it occurred.

Drawing all inferences in favor of the State, a rational fact finder could have found that the State's circumstantial and direct evidence proved beyond a reasonable doubt that P.N. was present at the robberies of Newton and Hebert. As such, P.N.'s sufficiency challenges to his convictions for robbery in the first degree as to Newton and Hebert fail.

III.    Sufficiency of the Evidence of Intent to Inflict Great Bodily Harm

P.N. contends that his conviction for assault in the first degree for shooting at Tanielu Seuao should be reversed because there was insufficient evidence to prove the essential element of the crime that he intended to inflict great bodily harm on Tanielu Seuao when he shot at him.

To convict P.N. of assault in the first degree as charged, the State had to prove that P.N. assaulted Tanielu Seuao with the specific intent "to inflict great

bodily harm." RCW 9A.36.011(1); *State v. Elmi,* 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Specific intent is the intent "to produce a specific result, as opposed to intent to do the physical act that produces the result." *Id*. "Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances." *State v. Pedro,* 148 Wn. App. 932, 951, 201 P.3d 398 (2009). Relevant circumstances include the manner and act of inflicting the harm, the nature of the prior relationship, and any previous threats. *State v. Ferreira*, 69 Wn. App. 465, 468-69, 850 P.2d 541 (1993).

Here, the trial judge found that "[a]t 5:29 am and 24 seconds, the respondent [P.N.], sitting in the front-right passenger seat, discharge[d] a firearm from inside of the vehicle *at* Mr. [Tanielu] Seuao, striking the glass above his head, causing him to recoil back into the store. This was evidenced by the sound of gunfire, muzzle flash, and bullet defects in the store." (Emphasis added.) P.N. does not assign error to this finding of fact; thus, it is a verity on appeal. *See Johal*, 33 Wn. App. 2d at 413. Proof that a defendant fired his weapon at a victim has been held to be sufficient evidence that the shooter intended to inflict great bodily harm as an essential element of an assault in the first degree conviction, *see State v. Mann*, 157 Wn. App. 428, 439, 237 P.3d 966 (2010), and even sufficient evidence of an intent to kill, *see State v. Hoffman*, 116 Wn.2d 51, 84-85, 804 P.2d 577 (1991).

P.N. argues, somewhat incredibly, that there was no evidence of a history of animosity between him and Tanielu Seuao. To the contrary, mere minutes before P.N. shot at Tanielu Seuao, he had attempted to rob Tanielu Seuao at

gunpoint. Tanielu Seuao had given chase wielding a bat and hit the car door multiple times near where P.N. was seated in the vehicle. Then, P.N. and his accomplices deliberately returned to the scene of the initial altercation, where Tanielu Seuao was standing outside, and verbally engaged with Tanielu Seuao before P.N. shot at him from inside the vehicle.

P.N. further argues that because he fired the shot at Tanielu Seuao from some distance away and the bullet struck several feet above Tanielu Seuao's head, the evidence can support only that he intended to scare Tanielu Seuao or retaliate by damaging the store but not to inflict great bodily harm. P.N.'s proffered intent is certainly the inference most favorable to him. But, in a sufficiency of the evidence challenge, we draw reasonable inferences in the State's favor, not the defendant's. *Roberts*, 5 Wn. 3d at 237. The proper analysis on review is not whether the evidence could support some other determination, but only whether the one reached by the trial court is appropriately supported. *See State v. Zghair*, 4 Wn.3d 610, 624, 567 P.3d 1 (2025).

Viewed in the light most favorable to the State, a rational fact finder could just as easily infer from the circumstances that P.N. intended to inflict great bodily harm against Tanielu Seuao because he had, minutes before, attempted to rob Tanielu Seuao at gunpoint at the gas station and had been chased away with a bat. Nonetheless, he returned and shot a gun at Tanielu Seuao, striking the building above Tanielu Seuao's head and causing him to flee from the shot.

No. 88138-8-I/12

Therefore, the evidence was sufficient to sustain P.N.'s conviction for assault in the first degree of Tanielu Seuao.

    Affirmed.

WE CONCUR:

_____

Feldman, J.

_____

Birk, J.

- 12 -